**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HARIS N. KHAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  22-4131 |
| | : | |
| PENSKE CORPORATION | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                    **September 25, 2023**

In this breach-of-contract case, a company — apparently in the delivery business — contracted with Penske to buy a delivery truck.  Penske delivered the wrong truck, late, and that cost the delivery company business.  The problem is that the plaintiff here is not the delivery company; instead, it is Haris Khan — the individual who signed the bill of sale for the truck on behalf of the delivery company.  Because the individual was not a party to the contract, and failed to plead facts sufficient to show he is a third-party beneficiary to the contract, we dismiss the breach-of-contract claim for lack of standing.  We also dismiss the closely related negligent misrepresentation, fraudulent inducement, and tortious interference claims for the reasons discussed below.  Mr. Khan has leave to amend.

### I.  <u>Background</u>[1]

Mr. Khan is a Florida resident who arranged to purchase a truck from defendant Penske Corporation.  DI 9 ¶¶ 5, 7-12.  The record includes two bills of sale and a waiver and general release signed by Mr. Khan on behalf of Saber Security & Defense Consultation Group LLC

---

[1] The operative complaint is a First Amended Complaint (FAC) filed July 1, 2022.  DI 9.

(Saber).  DI 27 at 34-45.[2]  There are no allegations directly explaining the nature of Saber or Mr.

Khan's relationship to Saber, but we note that Mr. Khan and Saber have the same listed address,[3]

and that the waiver identifies Mr. Khan's title (presumably, in Saber) as "COO."[4]

Mr. Khan alleges that the agreement was for a 26-foot freightliner for delivery on

November 29, 2021.  DI 9 ¶¶ 8-9.  Several things went wrong.  The truck's delivery date was

delayed several times, until February 10, 2022.  *Id.*  And the truck delivered was a 20-foot truck

without a liftgate as opposed to the 26-foot truck with a liftgate originally agreed upon.  *Id.* at

¶¶ 10-19.  These problems prevented Mr. Khan from being able to fulfill a contractual agreement

for the delivery of goods in the amount of $3,000 per week, totaling not less than $90,000.  *Id.* at

¶ 20.

The original complaint in this action was filed in the Northern District of Florida and

named Mr. Khan and Saber as plaintiffs (Mr. Khan filed on his own behalf and on Saber's

behalf).  DI 1.  The claims were (and still are) breach of contract,[5] negligent misrepresentation,

---

[2] The page numbering is generated by ECF.  One bill of sale was made part of the record already.  DI 20 at 4-5.  The other bill of sale and the waiver of general release will be considered for the same reasons.  *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (cleaned up)).  At no point in this case has Mr. Khan denied the authenticity or relevance of the sale documents.

[3] *Compare* DI 9 ¶ 5, *with* DI 27 at 36.

[4] DI 27 at 45; *see also* DI 11 at 1-2.

[5] There does not seem to be any dispute that the allegedly breached contract is the January 3, 2022 bill of sale.  DI 27 at 40-43.  The December 29, 2021 bill of sale is the same in all material respects.  DI 27 at 35-38.  In this opinion we will refer to one or both as simply the bill of sale or the contract.

fraud in the inducement, and tortious interference with contract. *Id.*; DI 9.  The Florida court struck Saber as a party because the complaint contained no allegations about Saber's role in the dispute and because a pro se plaintiff cannot represent a corporate entity.  DI 5 at 2.  Later, the Florida court transferred the action to this district because the bill of sale contained a forum selection clause exclusively identifying "state or federal courts sitting in or having jurisdiction over Berks County, Pennsylvania."  DI 20 at 6.

Of present concern, Penske filed an amended motion to dismiss the FAC on November 25, 2022.  DI 27.  Penske asks us to dismiss the breach of contract count for any of four reasons: (i) Mr. Khan lacks standing because the contract is with Saber; (ii) the contract had no delivery date requirement; (iii) the contract disclaimed liability for consequential damages; and (iv) relief is barred by the contract's limitation of liability clause.  *Id.*  As for the other counts, Penske argues that negligent misrepresentation is barred by the gist of the action doctrine, fraudulent inducement fails because Mr. Khan was not a party to the contract, and the tortious interference allegations lack the required allegations of purposeful action to harm the contract or other improper actions.  *Id.*  Mr. Khan offered an opposition to some, but not all, of Penske's arguments.  DI 28.  We will take each in turn.

## II.   <u>Analysis</u>

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility."  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Although a court must accept the factual allegations in a complaint as true, it is

not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).  Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged.  *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545.

### A.  Mr. Khan lacks standing because the FAC has no factual allegations showing that he is a party or third-party beneficiary to the contract.

Mr. Khan does not appear to contest that Saber is the party to the contract.  Given that, by all appearances, Saber is the real party in interest (and not Mr. Khan), and the case has a standing problem at the outset.  Fed. R. Civ. P. 17(a)(1).  But Mr. Khan argues that he is a third-party beneficiary of the contract, entitled to bring a breach-of-contract suit.

A plaintiff must have standing to sue in federal court, and "[w]ith respect to breach of contract cases, a party is aggrieved and therefore has standing to bring a breach of contract claim only if they are a party to the contract at issue."  *Takeda Pharms. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 205 (E.D. Pa. 2019) (cleaned up).  Nonetheless, under Pennsylvania law, a third-party beneficiary of a contract may also have standing.  *Guy v. Liederbach*, 459 A.2d 744 (1983). Pennsylvania follows the Restatement on this point:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302.  Thus, as *Guy* explained, there is a two-part test for determining whether one is an intended third-party beneficiary, and the standing part is: "[f]or any suit to be brought, the right to performance must be 'appropriate to effectuate the intentions of the parties.'"  459 A.2d at 751 (quoting Restatement (Second) of Contracts § 302).  We have discretion "to determine whether recognition of third party beneficiary status would be 'appropriate.'"  *Id.* at 752.

In *Scarpitti v. Weborg*, the Pennsylvania Supreme Court further elaborated that, as a general rule, "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself."  609 A.2d 147, 149 (1992).  And there is one final safety valve — even if that intention is not in the contract itself, the third party may still be deemed a beneficiary if:

> the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* at 150-51.

In this case, the contract is a run-of-the-mill sale arrangement between a buyer and a seller.  Everywhere the body of the contract identifies the buyer, it is always Saber, and never Mr. Khan.  The contract begins "[t]his Motor Vehicle Bill of Sale . . . is made . . . between

5

Penske . . . and Saber . . . ('Purchaser') (collectively 'the parties')," and then it discusses only the obligations of and benefits to the "Purchaser."  DI 27 at 40-41.  In the signature block, the "Purchaser" is again identified as Saber.  *Id.* at 41.  There is no mention in the contract of anyone who might benefit from the sale other than Saber.  Thus, the contract contains no expression of an intention that Mr. Khan be the beneficiary of the deal.

The only clue that Mr. Khan *might* be a third-party beneficiary here is that he signed on behalf of Saber.[6]  But without resorting to speculation, neither the contract nor the allegations in the FAC give us any basis to conclude that the parties intended to benefit Mr. Khan with the agreement, or any "compelling" circumstances that recognizing Mr. Khan's "right is appropriate to effectuate the intention of the parties."  *Scarpitti*, 609 A.2d at 150-51.  Thus, applying Pennsylvania law to the record here, we must conclude that Mr. Khan lacks standing to pursue his breach of contract claims.[7]

### B.  Mr. Khan's negligent misrepresentation claim is barred by the gist of the action doctrine.

Depending on the circumstances, tort claims of negligent or intentional misrepresentation may be subsumed by the contractual duties at issue in a breach-of-contract case.  Pennsylvania's gist of the action doctrine precludes the mere recasting of ordinary breach of contract claims as

---

[6] We are reluctant to speculate on facts that might give rise to standing as none are apparent here.  Simply having a stake in a business is not enough.  *Burdon v. Erskine*, 401 A.2d 369, 370 (1979) ("An injury to a corporation may, to be sure, result in injury to the corporation's stockholders.  Such injury, however, is regarded as 'indirect,' and insufficient to give rise to a direct cause of action by the stockholder.").

[7] Penske advanced several other arguments for dismissal of the breach of contract claim, but those arguments assume that Mr. Khan has standing.  On this record, he does not.  As such, we need not address them here.

tort claims. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The

basic question is whether the duty at issue was created by the contract or is a "broader social duty

owed to all individuals." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014).  The doctrine bars

tort claims in four situations: "(1) where the tort claim arises solely from a contract between the

parties; (2) where the duties allegedly breached were created and grounded in the contract itself;

(3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a

breach of contract claim or the success of which is wholly dependent on the terms of a contract."

*Id.* at 67 (cleaned up).

The FAC describes the alleged negligent misrepresentation as follows: "the Defendant

engaged in numerous misrepresentations of material fact including but not limited to the

availability of a 26 foot truck as well as the date the vehicle would be ready for obtaining by the

plaintiff."  DI 9 ¶ 30.  This allegation tracks Mr. Khan's breach of contract claim, where he

alleged that Penske "breached the agreement by failing to provide a 26 foot truck as agreed

upon" because it was not ready and it was a 20-foot truck.  *Id.* at ¶¶ 24-25.  Thus, the negligent

misrepresentation claim falls squarely within the gist of the action doctrine because the alleged

misrepresentations are the same as the alleged contractual duties, and the pertinent duty exists

only because the contract exists.  *Bruno*, 106 A.3d at 112.  Because the FAC is merely recasting

the breach-of-contract claim as a negligent misrepresentation claim, the negligent

misrepresentation claim is dismissed.

**C.  Mr. Khan's fraudulent inducement claim must be dismissed for the same reason
    as his breach of contract claim.**

As discussed above, we lack the alleged facts to conclude that Mr. Khan has standing as

either a party to the contract or a third-party beneficiary.  He therefore also lacks standing to

pursue a claim for fraudulent inducement, because — at least as pled in the FAC — any injury arising from the fraudulent inducement would have been experienced by Saber, not Mr. Khan. *See Crawford v. SAP Am., Inc.*, 147 F. Appx' 234, 238 (3d Cir. 2005) (dismissing breach and fraudulent inducement claims together).  For that reason, we dismiss the fraudulent inducement claim.

### D.  Mr. Khan's tortious interference claim must be dismissed because the FAC fails to state an adequate basis for the claim.

The tortious interference claim has similar problems.  According to the FAC, the tortious interference here was Penske's "numerous acts of negligent misrepresentation and fraud in the inducement," which interfered with a contract between Mr. Khan and an unnamed third party for the delivery of goods.  DI 9 ¶¶ 43-45.  The elements of tortious interference are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997) (cleaned up).  Mr. Khan's claim must be dismissed because the FAC lacks sufficient facts to plausibly allege interference.  The FAC tells us almost nothing about the third-party delivery contract, how Penske would have known about it, or in what way Penske's actions were purposeful or specifically intended to harm that delivery contract.  Thus, tortious interference is insufficiently pled and that claim must be dismissed.

III.   **<u>Conclusion</u>**

For the reasons discussed, we grant Penske's motion to dismiss (DI 27) without prejudice, and grant Mr. Khan leave to amend his complaint **<u>within thirty (30) days</u>**, if the facts allow him to do so.[8]

---

[8] Another option, at least regarding the standing problem, would be for Saber to retain counsel and appear as a plaintiff.